IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

FLAVA WORKS, INC.,              )
                                )
              Plaintiff,        )
                                )
     v.                         )      No.  11 C 6306
                                )
LEE MOMIENT,                    )
                                )
              Defendant.        )

                   MEMORANDUM OPINION AND ORDER

    This pitched battle between two competing producers and purveyors of truly hardcore pornographic materials began with the filing of a Complaint by Flava Works, Inc. ("Flava") charging that defendant Lee Momient, Jr. ("Momient") had infringed Flava's copyrights in its salacious materials[1] by reproducing them in Momient's competing commercial websites.  After a good many procedural skirmishes (for example, Flava's filing of successive versions of its Complaint in lieu of responding to Momient's motions to dismiss), Flava's Third Amended Complaint ("TAC") generated an Answer coupled with no fewer than 21 purported Affirmative Defenses plus a Counterclaim advanced by Momient.[2] As the Counterclaim would have it, Momient and not Flava owns the

---

[1] "Salacious" is used here with the meaning set out in the second--not the first--definition of that adjective in Webster's Third New International Dictionary.

[2] This Court has continued to decline Momient's efforts to obtain pro bono representation through this Court's trial bar. Nothing in his pleadings or general conduct in the litigation reflects an inability on his part to handle the case on his own--quite the contrary is true.

disputed pornographic materials, which Momient has registered with the United States Copyright Office, so that Flava and not Momient is the copyright infringer.[3]

That brings the matter to its present posture, in which this Court issued a brief March 18, 2013 memorandum order that denied Flava's motion to dismiss Momient's counterclaim--now his Amended Counterclaim ("ACc")--and ordered that his pleading be answered instead. That generated a March 28 response by Flava that for the first time asserted that Momient had entered into a Commission Work Agreement with Flava going back to 2005, in which Momient had agreed to "work made for hire" terms as defined in Section 101 of the Copyright Act of 1976.

That was indeed a surprising (and very late) development in a lawsuit that was then 1-1/2 years old--after all, that agreement and commitment would normally have been expected to be referred to (and perhaps be added as an exhibit) in an initial

---

[3] This opinion will not address what may be characterized as moral issues, such as:

    1. Why should or does the United States Copyright Office provide registration for, and thus confer enforcement rights for the purveyors of, hard core pornography?

    2. Under the circumstances presented here, why should federal courts not apply in pari delicto treatment (or as Mercutio had it in Romeo & Juliet, "A plague o' both your houses!") to refuse legal relief to both parties?

Discussion of such issues is eschewed here because this Court, as it must, takes the law in those respects as the established authorities have defined it.

complaint charging copyright violation, for it could well be dispositive in Flava's favor on its own claim as well as scotching any possible claim on Momient's part.  Understandably that then led to this Court's immediate issuance of an April 1 memorandum order calling on Flava to submit copies of the Commission Work Agreement plus "any additional documentary evidence that is available to establish (or to negate) Flava's copyright violation claim or Momient's copyright violation Counterclaim."

When that material was filed and Flava's counsel came in thereafter on a motion that aspects of it should be filed under seal (as he had originally intended), Momient vehemently denied in open court that he had entered into any claimed Commission Work Agreement.  Instead Momient asserted that the purported signature on that document was really his actual signature on a quite _different_ document--a printed form of Model Contract and Release that had been entered into between the parties back in 2005.

According to Momient, his signature on that other document had been lifted and fraudulently placed on a typewritten single-spaced document captioned "Commission Work 'Work for Hire' Agreement."[4]  This Court looked at the two documents while the

---

[4] That latter document was Ex. 1 to Flava's most recent submission, while Momient identified the original (and assertedly transposed) signature as appearing on page 4 of Flava's Ex. 2.

parties were before it and orally rejected Momient's contention, pointing out that his bizarre (and quite illegible) form of signature regularly ended with a long "tail" stretching out to the right and that the tail on the Ex. 1 signature was virtually a straight line, while the signature that this Court understood Momient to be referring to in Ex. 2 ended with a prolonged tail that was obviously curved.

Now Momient has noticed up for presentment on April 17 his own motion to file a number of documents under seal--documents that demonstrate beyond any possible dispute that Flava's Ex. 1, the purported Commission Work Agreement containing the detailed "work for hire" provision as its paragraph 4, is indeed a skilled forgery. In that respect it turns out that this Court's oral in-court statement was simply mistaken, because it had been looking at the wrong page in Ex. 2. By way of explanation, when Momient made his oral in-court accusation, this Court had Flava's submission before it, with all of the exhibits demarcated by physical tabs protruding from the right-hand edge of pages in that submission. When Momient referred to the fourth page in Ex. 2, this Court lifted the Ex. 2 tab and counted four pages from there (none of the pages within the exhibit were numbered) and looked at the signature on that page. Momient's current filing has caused this Court to go back to the document, and it found that the "Ex. 2" tab was not on a separate page, as is most

4

often the case, but was actually affixed to the first page of the exhibit. Hence the "fourth page of Ex. 2," to which Momient referred, is actually the third page <u>after</u> the tab--and that page contains a bona fide signature by Momient that has indisputably been transposed onto a totally bogus document.[5]

What we have, then, is the most egregious fraud on the court that this Court has encountered in its nearly 33 years on the bench. What, then, is the appropriate judicial response to such an egregious abuse of the judicial system by such a blatant fraud on the Court?

Despite (or perhaps because of) the gravity of the offense involved, this Court does not write on a clean slate in that regard. Two decades ago the Supreme Court expounded on courts' inherent power to impose sanctions for bad-faith conduct in <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32 (1991). Here, for example, are relevant excerpts from <u>Chambers</u>, <u>id</u> at 44, 44-45:

> Of particular relevance here, the inherent power also
> allows a federal court to vacate its own judgment upon
> proof that a fraud has been perpetrated upon the court.
> See <u>Hazel-Atlas Glass Co. v. Hartford-Empire Co.</u>, 322
> U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); <u>Universal
> Oil Products Co. v. Root Refining Co.</u>, 328 U.S. 575,
> 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946). This
> "historic power of equity to set aside fraudulently

---

[5] If any proof were needed beyond the extraordinarily detailed presentation in Momient's proposed April 17 presentation (and it is not), the genuine Model Contract and Release that contains Momient's actual signature was dated April 24, 2005, while the phony Commission Work Agreement is backdated as well (it bears a fictitious August 11, 2005 date).

5

> begotten judgments," Hazel-Atlas, 322 U.S., at 245, 64 S.Ct., at 1001, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner...involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." Id., at 246, 64 S.Ct., at 1001. Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. Universal Oil, supra, 328 U.S., at 580, 66 S.Ct., at 1179.
>
> \*       \*       \*
>
> Because of their very potency, inherent powers must be exercised with restraint and discretion. See Roadway Express, supra, 447 U.S., at 764, 100 S.Ct., at 2463. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. As we recognized in Roadway Express, outright dismissal of a lawsuit, which we had upheld in Link, is a particularly severe sanction, yet is within the court's discretion.

There is more, but it would unnecessarily and unduly lengthen this opinion to enlarge on the potential imposition of sanctions other than dismissal, on which this opinion will focus.[6]

Fortunately courts are rarely called upon to consider fraud-on-the-court conduct of the type engaged in by Flava. But research has turned up an Eighth Circuit case, Pope v. Fed. Express Corp., 974 F.2d 982 (8th Cir. 1992), that dealt with highly comparable conduct (id. at 983):

> Based on expert testimony and demonstrative evidence,

---

[6] Nor is anything said by the dissenting Justices in Chambers that detracts from its force in the excerpts quoted in the text of this opinion. Instead their disagreement focused on other aspects of the majority opinion regarding other potential sanctions.

6

> the district court ruled that this note could not have
> been handwritten by defendant Collins, and instead had
> been manufactured as a cut and paste composite of other
> documents. The district court concluded that Pope lied
> during her October 12, 1989, supplemental deposition
> when she stated, under oath, that the original document
> with the "handwritten" innuendo, had been left on her
> desk, presumably by defendant Collins. The district
> court further ruled that Pope knew, before she produced
> the document, that it was a manufactured document, and
> that Pope produced the document with intent to mislead
> the court.

And the Court of Appeals, id. at 984 went on to hold (citing Chambers as authority):

> Dismissal of Pope's lawsuit is a severe sanction, yet
> under the circumstances we cannot find that such a
> sanction constitutes an abuse of the district court's
> discretion. The dismissal of Pope's suit was based on
> the district court's finding that manufactured evidence
> and perjured testimony had been introduced in an
> attempt to enhance the case through fraudulent conduct.
> When a litigant's conduct abuses the judicial process,
> the Supreme Court has recognized dismissal of a lawsuit
> to be a remedy within the inherent power of the court.
> We affirm the district court's dismissal of Pope's
> Title VII action.

In sum, then, this Court anticipates the dismissal of Flava's TAC and its action against Momient with prejudice. But although it is difficult to conceive any predicate for Flava's refutation of the skillfully-put-together presentation that demonstrates its fraud, this Court will give Flava the opportunity to do so.

Two related aspects of this litigation should also be addressed briefly here. One has to do with the possibility of other sanctions on the plaintiff's side of the "v." sign, and the

7

other has to do with the status of Momient's ACc.

As for the first possibility, this Court anticipates that it may receive input from the parties (although nonlawyer Momient cannot of course recover attorney's fees under Fed. R. Civ. P. 11 or otherwise). And although nothing that has taken place before this Court suggests that Flava's attorney Meanith Huon would have played any role in the fraud discussed here, inquiry may perhaps be directed to him both to confirm that and to provide information as to the generation of the bogus document (in that regard the question of attorney-client privilege need not bar such inquiry for more than one reason, a matter that does not require further elaboration at this point).

As for the other side of the "v." sign, the dismissal of Flava's action through the exercise of inherent judicial power does not necessarily assure the success of Momient's ACc. It remains possible, as a matter or fact or law or both, that Momient's role in the development and production of the disputed material while he was affiliated with Flava was indeed subject to a "work for hire" limitation that precluded his ownership and hence any valid copyright interest on his part. That too remains for future determination.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 16, 2013

8