```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


 FLAVA WORKS, INC.,              )
                                 )   No. 11 CV 6306
                 Plaintiff,      )
                                 )   Chicago, Illinois
            v.                   )   April 30, 2013
                                 )   9:30 a.m.
 LEE ARTHUR MOMIENT, also known as )
 Lee Moment,                     )
                                 )
                 Defendant.      )

                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE MILTON I. SHADUR

 APPEARANCES:

 For the Plaintiff:     HUON LAW FIRM
                         BY:  MR. MEANITH HUON
                         P.O. Box 441
                         Chicago, Illinois 60690


 For the Defendant:     MR. LEE ARTHUR MOMIENT
                         PRO SE
                         P.O. Box 608082
                         Chicago, Illinois 60660




                   Valarie M. Ramsey, CSR, RMR
                          P.O. Box 16
                   Hazel Crest, Illinois 60429
                         (708) 860-8482
```

|   |   |
|---|---|
| 1 | THE CLERK: 11 C 6306, Flava Works versus Momient, |
| 2 | motion. |
| 3 | MR. MOMIENT: Good morning, Judge. Lee Momient, |
| 4 | defendant. |
| 5 | MR. BLEICHER: Philip Bleicher, CEO of Flava Works. |
| 6 | MR. HUON: Meanith, M-e-a-n-i-t-h, Huon, H-u-o-n, for |
| 7 | the plaintiff. |
| 8 | THE COURT: Well, this has been initiated by |
| 9 | Mr. Momient as what he calls special matter Rule 9(b), and I'm |
| 10 | not sure what he's talking about. |
| 11 | MR. HUON: I don't either, Judge. I'm not sure what |
| 12 | he's asking me to do. |
| 13 | MR. MOMIENT: Well, I mean, you know, I asked the |
| 14 | Court to look at the, you know, the substance rather than the |
| 15 | form. I'm not -- as a pro se litigant, I'm not exactly sure |
| 16 | how to file a motion like this or -- |
| 17 | THE COURT: I'm not sure that you ought to be filing |
| 18 | it, you know. I made it plain the last time that unless you |
| 19 | had something that was a substantive predicate for trying to |
| 20 | implicate Mr. Huon in what I have found to be a fraud |
| 21 | committed by Flava Works, Inc., that I was not going to |
| 22 | entertain anything of that nature because there's nothing that |
| 23 | is I think more important to a practicing lawyer than the |
| 24 | notion of that lawyer's integrity, the thing the -- lawyers |
| 25 | have special rules that they must comply with. |

1  But I got to tell you also that non-lawyers also have
2  special rules that they have to comply with. And that is that
3  Rule 11(b), which talks about the representations that are
4  made by anybody who files any document in court, including
5  persons who are unrepresented by counsel, and so those
6  standards are exactly the same. And I don't know whether,
7  Mr. Momient, whether you've had a chance to read over Rule 11,
8  but you should.
9       MR. MOMIENT: Judge, I'm certain that what I've filed
10 is accurate. I mean, there's no doubt in my mind that that's
11 what Mr. Huon said and that's what Mr. Bleicher said. And
12 there's also no doubt -- and, you know, it was because of the
13 fact of your fairly stern warning last time that we were here
14 that I sort of back away from the accusations --
15      THE COURT: I'm sorry. You have said on information
16 and belief, Huon has shown that he will suborn perjury of
17 Flava employees and Philip Bleicher with regard to the
18 forgery. Now, that's scurrilous. It is outrageous.
19      Let me just read something to you, which is Rule
20 11(b). And I'll just, I'll skip some of the unrelated stuff.
21      "By presenting to the Court a pleading, written
22 motion or other paper, whether by signing, filing, submitting
23 or later advocating it, an attorney or unrepresented party
24 certifies that to the best of the person's knowledge,
25 information and belief formed after an inquiry reasonable

1  under the circumstances, one, it is not being presented for
2  any improper purpose such as to harass, cause unnecessary
3  delay or needlessly increase the cost of litigation." I'll
4  skip number two because this is about legal contentions. And
5  number three says, "the factual contentions have evidentiary
6  support, or if specifically so identified, will likely have
7  evidentiary support after reasonable opportunity for further
8  investigation or discovery."
9  　　　　　Now, I read what you filed here, and I think that
10  what you have said, which would be defamatory if it were not
11  privileged by reason of its being filed in a legal proceeding,
12  is extraordinarily troubling. And it goes on to say: "On
13  information and belief, this matter reveals that Philip
14  Bleicher and Meanith Huon intend to act with malice and
15  willful intent to further frustrate the functions of the Court
16  with regard to the fraudulent forged documentation submitted
17  to the Court."
18  　　　　　As I read this, I was put in mind of a couple of
19  lines of doggerel that were attributed to a fellow who became
20  the subject of I don't know whether a book or a -- called Tom
21  Brown at Oxford, but Tom Brown when he was a student at
22  Christchurch in Oxford in the late 1600s became famous for a
23  quatrain that says, "I do not love thee Doctor Fell; the
24  reason why I cannot tell; but this alone I know full well; I
25  do not love thee Doctor Fell."

1  You know, you don't get any brownie points for this
2  kind of stuff, and I am really troubled by it. And you see,
3  I've already, as you know, rejected the complaint against you
4  because of this fraud, but it sounds to me as though you're
5  inviting a comparable determination about your counterclaim
6  and which would leave the two of you to go fighting it out in
7  an alley someplace. It's very troubling.
8  MR. MOMIENT: Judge, can I respond, if that's all
9  right, Judge?
10  THE COURT: Yes.
11  MR. MOMIENT: All right. First off, I do want to
12  again reiterate that the conversation that I talked about in
13  this filing is accurate. That's what I witnessed, and I saw
14  that with my own eyes.
15  Later on, and maybe I should have attached it as an
16  exhibit, later on in that week there were several news reports
17  that came out online from several trade papers, AVN and other
18  articles -- other news organizations that deal in the adult
19  industry that talked about Philip Bleicher and his reporting
20  about this case. They asked him about the case, and he
21  replied. They asked him about the fraud on the Court, and he,
22  according to these reports, he replied. He said, well, and
23  what he said followed up what I heard, and what he said to the
24  news reports, if they're accurate, is that we intend to show
25  that Mr. Momient gave us this document as it is.

1    THE COURT:  Wait just a minute.
2    MR. MOMIENT:  And that he's the one who forged the
3 document.
4    THE COURT:  Wait just a minute.
5    You know, did you ever hear of guilt by association?
6 I'm making no comment with respect to the document.  I've
7 already ruled on that.  I have found that it was a forgery.  I
8 have granted some relief by reason of that.  But you're not
9 being responsive.  And you're smart enough to understand that
10 I'm not asking you about him.
11    You just don't seem to have any respect at all for
12 the manner in which you ought to conduct yourself.  And as far
13 as I'm concerned, I think you may have arrived at the ultimate
14 moment of truth.  When I hear you persisting this way, I don't
15 know that there is any justification at all for permitting you
16 to abuse the Court by this kind of stuff and that maybe the
17 sensible thing to do is to strike your counterclaim as well
18 and terminate this lawsuit.  And you people can go, as I say,
19 start knocking each other over the head in the alley for all I
20 care.
21    MR. MOMIENT:  Well --
22    THE COURT:  You know, I wish that you could listen to
23 yourself when you make this kind of material.  You blur over
24 the whole idea of what it is that lawyers have a
25 responsibility to do.  They represent clients.  They have

1  obligations to their clients.  They also have obligations to
2  the system.
3          What you have said is that in your belief.  You know,
4  the phrase on information and belief is easy.  It rolls off
5  the tongue.  But there's a sharp difference between
6  information and belief.  You can well have a subjective
7  belief, and I can't get into your head and correct that.  But
8  information, nothing.
9          And so, Mr. Huon, I haven't given you an opportunity
10 to talk, and I'm not sure that it's necessary but --
11         MR. HUON:  I can be brief, Judge.  I think I know
12 what his concerns are, but I think that he should just give us
13 an opportunity to respond to what the Court had asked us to
14 prepare a response brief, because after conferring with
15 Mr. Bleicher, I asked Mr. Bleicher for the deposition
16 transcript that he gave in the state lawsuit for some years
17 ago.  I don't recall the years offhand.  And whatever we're
18 going to say in the response brief is going to be consistent
19 in that deposition transcript.  And Mr. Momient should know
20 about that deposition transcript.  And my recollection of
21 reading that deposition transcript is Mr. Bleicher says in the
22 deposition transcript in the state lawsuit taken a couple of
23 years ago that Mr. Momient handed him that document and that
24 he did not see Mr. Momient sign it in his presence.
25         So I think Mr. Momient should wait until we respond

1   because we haven't had a chance to respond in writing.  And
2   it's not going to come out as a surprise because it would be
3   consistent with whatever Mr. Bleicher said in the state
4   lawsuit.  And we'll attach a copy of the deposition
5   transcript.  We're not going to leave any pages out.
6          And so this thing about -- I received an email from
7   AVN News, and I did not respond to the email.  I have not
8   called any news organizations or anything like that.  So this
9   thing about some sort of strategy where Mr. Bleicher is going
10  to invent something, we're not going to do that.  We're going
11  to go back to the state court lawsuit and attach as a
12  deposition transcript something that Mr. Momient is already
13  aware of.  He knows about the deposition transcript.  He's
14  part of that lawsuit.  I'm sure that his attorney gave him an
15  opportunity to review the deposition transcript.
16         So I'm just asking to just give us a chance to
17  respond in writing, not to this current motion, but you've
18  already set a schedule for us to respond to the issues that
19  were raised, and I haven't really had a chance to really sit
20  down with Mr. Bleicher.  We're planning to do that on Thursday
21  and Friday and put something together and file it by next
22  week.
23         THE COURT:  Let me see if I understand what you're
24  saying.  How long ago was this other litigation?
25         MR. HUON:  That's -- if I could just say one other --

1 　　　　　THE COURT: Roughly, roughly.

2 　　　　　MR. BLEICHER: 2006.

3 　　　　　MR. HUON: That's the other issue, Judge. I wanted
4 to talk about the other litigation, but if you recall,
5 Mr. Momient kept saying that everything has to be filed under
6 seal, everything has to be filed under seal. So I kept saying
7 as a courtesy I couldn't really say anything, so you told me
8 to file the response brief that we're going to file under
9 seal, and then Mr. Momient --

10 　　　　　THE COURT: Wait just a minute.

11 　　　　　MR. HUON: Sure.

12 　　　　　THE COURT: As I understand it, what's being said or
13 what was said in that deposition back in 2006 is that
14 Mr. Momient had delivered the document which is -- which
15 became Exhibit 1, Tab 1, delivered that document in that form
16 back then, back in 2005.

17 　　　　　There's no question from the documents that I've seen
18 that is the part of tab 2 that there was a document which is I
19 think unquestioned in terms of its authenticity that is the
20 other contract that had Mr. Momient's signature on it.
21 There's no dispute about that, is there?

22 　　　　　MR. HUON: I haven't heard back from my client
23 formally. I told him to go talk to a handwriting expert, and
24 I'm still waiting for --

25 　　　　　THE COURT: Forget about handwriting experts. Wait a

1 minute. Listen to me.

2 Those were documents that were executed in the
3 regular course of that business activity. That is the several
4 documents, I forget what the exact caption of them was, but
5 those were documents that were generated back then in the
6 ordinary course of activity. And in each instance Mr. Momient
7 signed them. And I haven't heard anything to suggest that
8 those are not legitimate, right?

9 MR. MOMIENT: Correct, Judge. I mean, if you're
10 asking me, correct. I haven't challenged the --

11 THE COURT: No, no. I'm asking Mr. Huon. You know
12 what I'm talking about.

13 MR. HUON: Yes, Judge.

14 THE COURT: There isn't any contention that those are
15 somehow bogus or hoked up or anything like that? Those were
16 signed in the regular course of whatever business activity
17 they were engaged in, right?

18 MR. HUON: I don't know because I'm still
19 investigating the state court lawsuit. And I was asking my
20 client. I thought Mr. Momient took the position in the state
21 court lawsuit that some of the modeling contracts were not his
22 signature. That's what I thought. I'm still investigating
23 the state court lawsuit, and I wanted to meet with my client
24 on Thursday and Friday to get more information. So I don't
25 want to say something and then have Mr. --

1      THE COURT: So you're saying that there was a
2  contention that some of the -- that any of these modeling
3  contracts, that's what they were, I gather, were not
4  themselves authentic?
5      MR. HUON: I just don't know, Judge, because I'm
6  going through the deposition transcripts, and I've asked my
7  client to give me all the documents that he has in his
8  possession relating to the state court lawsuit. And the state
9  court lawsuit is up on appeal, and there is another attorney
10 that's handling the state court lawsuit.
11     I thought I saw a reference where maybe Mr. Momient
12 or his attorney was challenging the authenticity of the
13 signatures on some of the modeling contracts. I just don't
14 recall offhand.
15     The state court litigation is long. It's not
16 something that you can just read in a few hours. And I don't
17 have all the documents. I'm just -- we're still trying to
18 formulate a response brief, Judge.
19     And Mr. Momient can answer as to whether he
20 contends -- what he contended in the state lawsuit. I just
21 don't know. My role in the state court lawsuit is kind of
22 limited.
23     THE COURT: As you might gather, the reason for my
24 questioning is that there isn't the slightest doubt that those
25 two signatures are identical, not the slightest. That

1  Mr. Momient has established, and that is available and readily
2  ascertainable.  So what we have is that the identical
3  signature appears on a document that's dated I think it was
4  April 11th or August 11th of one year, and the other document
5  is dated -- I think it was April maybe -- dated April 25th of
6  that year and that the two documents have identical
7  signatures.
8  　　　　So if I understand what you're saying, or relaying,
9  more accurately, that suggests that there was some incentive
10 back then for Mr. Momient to fabricate a document?  Because --
11 　　　　MR. HUON:  May I add something else, Judge?  I just
12 want to clarify if I just may.
13 　　　　When we -- and it also goes back to your memorandum
14 that you issued.  When we filed this copyright infringement,
15 your Honor, it was for an image that was used on a website
16 called House on the Hoods.  We did not file the copyright
17 infringement based on Dorm Life Five.  My client had no idea
18 that Mr. Momient back at this time took Dorm Life Five and
19 registered it with the copyright office.  This copyright
20 lawsuit was never about Dorm Life Five.
21 　　　　THE COURT:  I understand that.
22 　　　　MR. HUON:  Right.
23 　　　　So after we filed this copyright lawsuit, Mr. Momient
24 files this counterclaim where he raises Dorm Life Five for the
25 first time.  That's why the work force sharing agreement never

1    came up.  The work force sharing agreement had nothing to do
2    with the copyright infringement.  We were just alleging that
3    he took an image and infringed it.
4           When Mr. Momient brought the counterclaim and he
5    raised the issue of --
6           THE COURT:  I understand how that got in.
7           MR. HUON:  Right.  So --
8           THE COURT:  But I'm still looking at --
9           MR. HUON:  Right.
10          THE COURT:  -- the question of authentication and
11   of --
12          MR. HUON:  So to answer your question.
13          THE COURT:  Clearly, one of those documents had a
14   signature that was somehow transposed from someplace else onto
15   that document, either the work for hire agreement or the
16   modeling contract, one or the other, because you cannot really
17   have that kind of replication in real life ever.  That's
18   painfully obvious.  So it's clear that, as I say, one or the
19   other is not a legitimate signature that was affixed to that
20   document in the first instance.
21          MR. HUON:  I was trying to say something else if I
22   could just finish, Judge.
23          Mr. Momient attests or alleges that back in 2005 he
24   had a dispute with Mr. Bleicher and he went to go see a
25   copyright lawyer.  And out of that meeting with that copyright

1 lawyer there was a state court lawsuit that involved something
2 else which, you know, we're not supposed to talk about on the
3 record, so I have to submit it under seal. So there was some
4 sort of dispute between Mr. Momient and Mr. Bleicher that
5 resulted in a lawsuit.
6 So in the answer to your question, does Flava Works
7 think that back at this time that Mr. Momient had a reason to
8 do any of this, well, Flava Works had no idea that Mr. Momient
9 was even registering Flava Works' videos for a counterclaim
10 that he would bring up later down the road. So the fact that
11 he was in litigation after that meeting with this copyright
12 lawyer meant that during that time it is possible that
13 Mr. Momient was thinking about bringing a lawsuit against
14 Mr. Bleicher, and when he went to meet with his attorney he
15 gave different scenarios, and the attorney selected the
16 scenario that was the most plausible claim. And just we would
17 like an opportunity to respond to that.
18 And, you know, part of the problem is, like I
19 mentioned before, my hands are tied because Mr. Momient keeps
20 insisting that there's this order that prevents us from
21 talking about it. And I have a copy of the order. And I also
22 have another copy of an order, which when I put it in my
23 response brief, I don't think it does prevent us from talking
24 about it. But as a professional courtesy he wants me to put
25 everything under seal, so I have to get a response and file it

1 under seal.

2 In the meantime, as I'm trying to do everything under
3 seal, I asked the Court if he wants to do everything under
4 seal, and I thought the Court said file everything under seal,
5 and Mr. Momient turns around and files this motion that's not
6 even under seal, and we haven't had the chance to even respond
7 in writing yet, Judge.

8 MR. MOMIENT: Judge, may I respond to what Mr. Huon
9 just said? There's a couple of things.

10 I think that what Mr. Huon just said bears out what I
11 brought up in my motion, that they're going to claim somehow
12 that I --

13 THE COURT: I wish that you would stop using the term
14 "they" collectively.

15 MR. MOMIENT: Pardon me.

16 THE COURT: Just a minute.

17 MR. MOMIENT: I'm not a lawyer, Judge, so --

18 THE COURT: I don't care whether you're a lawyer.
19 You're a human being, and you can speak English, and you ought
20 to speak English in an appropriate way.

21 Do not link up Mr. Huon with any activity that
22 somehow muddies him up because of what you claim Mr. Bleicher
23 did. You know, refrain.

24 MR. MOMIENT: Well, I will parse my language a bit
25 further.

1          Flava Works and Bleicher, as I said in my motion,
2   intend to claim that somehow I took the signature from one
3   document that they controlled, the model contract document,
4   and somehow in the manner of time in which they presented me
5   this work for hire agreement somehow managed to forge the
6   signature onto this agreement and then hand it to him.
7          Now, this is completely absurd, Judge. Not only are
8   there the deposition transcripts of Mr. Bleicher, but there
9   are also transcripts, deposition transcripts of employees of
10  Flava Works that Flava Works controlled. There's also
11  interrogatories which Flava Works submitted in which these
12  employees claim to have seen me sign the contract and then
13  allegedly hand it to Mr. Bleicher. So they went through,
14  again, great lengths to authenticate this document at one
15  point in time. And now they're backing away from that because
16  of your orders.
17         I mean Flava Works, Flava Works.
18         THE COURT: You're doing it again, "they."
19         MR. MOMIENT: When I say "they," I'm referring to
20  Philip Bleicher and Flava Works. I'm not referring to
21  Mr. Huon at this point. I would hope the Court would please
22  understand if I'm saying "they," I mean Flava Works and
23  Mr. Bleicher.
24         So they intend to bring this argument which is
25  completely baseless for an attempt to revive a lawsuit based

1  clearly in fraud. And, I mean, this is -- you know, this is
2  frustrating enough. I understand the Court's position about
3  muddying Mr. Huon. I understand that, Judge. But that was
4  just solely based on a conversation that we had out there in
5  which they revealed this strategy is what I would call it, and
6  in that regard I'm referring to Mr. Bleicher and Mr. Huon,
7  revealed this strategy that they intended to bring forward.
8      Well, the strategy is based in fraud again, fraud to
9  cover up the fraud, Judge.
10     THE COURT: That's it. That's it.
11     I have found that you have violated the provisions of
12 Rule 11(b) by your baseless accusations against a lawyer as to
13 whom you may have a belief but you have no information. And
14 when you talk about on information and belief, that is a term
15 of art.
16     As far as I'm concerned, I'm prepared to dismiss the
17 counterclaim and treat the action as terminated. And if
18 either or both of you want to take an appeal, I'm not going to
19 counsel you with respect to what you ought to do, but I got to
20 tell you this has really been to me an appalling experience, I
21 must say. I don't recall ever, ever having had this -- I'm
22 not -- I'm leaving aside the subject matter of the lawsuit.
23 It has nothing to do with that. It's just that this has been
24 totally uncivilized and inappropriate, and you don't seem to
25 know when to subside.

1    So my order is to strike the counterclaim because of
2 the continued violation of the provisions of Rule 11(b), and
3 this action is terminated.
4    Thank you.
5    MR. HUON: Can I just ask a question, Judge? Do we
6 need to respond to the --
7    THE COURT: No. The action is over.
8    MR. HUON: Okay. Is there any type of findings that
9 I've engaged in any type of --
10    THE COURT: I made my finding as to the grounds on
11 which I dismissed your complaint, and today I have made my
12 findings orally with respect to the grounds on which I've
13 dismissed the counterclaim.
14    MR. HUON: Thank you, Judge.
15    THE COURT: So the action is terminated.
16    MR. HUON: Thank you.
17    MR. MOMIENT: Judge, I'm going to file a motion to
18 reconsider. Do I do that, obviously, in this court
19 electronically, or is the termination going to somehow stop
20 the --
21    THE COURT: Take a look at -- you have access to
22 legal books, do you?
23    MR. MOMIENT: I do.
24    THE COURT: Take a look at the case called Above the
25 Belt versus Mel Bohannan Roofing Company, which I think is

1 probably at 99 F.R.D. 99, and you will see what the late
2 Dortch Warriner of Virginia had to say about motions for
3 reconsideration, and in language that I have quoted a number
4 of times and our court of appeals has quoted and a lot of
5 judges have quoted, because it tells you what the scope of
6 motions for reconsideration is. And it has nothing to do with
7 whether you disagree with what the Court has done. It has to
8 do with whether the Court has misapprehended the issues
9 involved. And if it's not that kind of thing -- and I think
10 that I have not misapprehended the issues. I've been living
11 with this one, as you know, and I've given both sides, I
12 think, more than their due from time to time in this
13 proceeding.
14     But in any event, I guess that's all I have to say.
15 Take a look at that opinion.
16     MR. MOMIENT: Can you, the opinion again? I don't
17 have a pen. Could you tell me what case that was that you --
18     THE COURT: It's called Mel Bohannan Roofing Company.
19 It's Above the Belt, Incorporated, versus Mel Bohannan Roofing
20 Company, and I'm quite sure that it's at 99 F.R.D. 99, not a
21 difficult citation to remember.
22     MR. MOMIENT: I got it, Judge.
23     THE COURT: But my ruling today is what I've
24 indicated.
25     MR. MOMIENT: Is it with prejudice, Judge? Just I

1  want to be clear before I leave the courtroom so I know
2  exactly what the ruling is.
3          THE COURT: I don't have to indicate that. I simply
4  indicate that the action is terminated. The consequence, the
5  legal consequence is what the legal consequence is.
6          MR. MOMIENT: Okay. Thank you, Judge.
7          MR. HUON: Thank you, Judge.
8          THE COURT: Thank you.
9
10                *   *   *   *   *   *   *
11                    C E R T I F I C A T E
12
13
14     I hereby certify that the foregoing is a true and
15  correct transcript of the above-entitled matter.
16
17  /s/ Valarie M. Ramsey                    05-09-2013
18  _____              _____
     Court Reporter                              Date
19
20
21
22
23
24
25